Tyler N. HAYNES, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 84–1590.

District of Columbia Court of Appeals.

Argued Oct. 21, 1985.

Decided Jan. 14, 1986.

Paul G. Evans for appellant.

William J. Earl, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy

Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before NEWMAN, FERREN, and TERRY, Associate Judges.

PER CURIAM:

This appeal arises from a forfeiture action brought by the District of Columbia pursuant to the Uniform Controlled Substances Act, D.C.Code § 33–552(a) (1985 Supp.), which authorizes the forfeiture of any vehicle used to transport controlled substances (*i.e.,* illegal drugs) or any "raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, or delivering any controlled substance...." The subject of the forfeiture action was a 1976 maroon Cadillac allegedly owned by appellant Haynes. The trial court entered a default decree of condemnation against the Cadillac after striking Haynes' answer to the libel of information filed by the District on the ground that Haynes had failed to provide full and complete answers to interrogatories.

On appeal Haynes makes several arguments for reversal. We do not consider his claim that the warrantless seizure of the Cadillac violated his Fourth Amendment rights, because the default decree was entered before the merits of this claim could be determined by the trial court. We reject his constitutional challenge to Super.Ct. Civ.R. 101(a)(1), although we hold that Rule 101(a)(1) is invalid for another, non-constitutional reason. Finally, we hold that the trial court abused its discretion in entering the default decree as a sanction for appellant's non-compliance with a discovery order. We therefore reverse the decree and remand this case to the trial court for further proceedings.

I

On January 26, 1983, appellant drove to Landover, Maryland, in his 1976 maroon Cadillac to pick up a shipment of certain chemicals used in making the illegal drug phencyclidine (also known as PCP). After returning to the District of Columbia, appellant was stopped by the police, who seized the Cadillac and its contents. A few weeks later the District of Columbia filed a libel of information, seeking forfeiture of the Cadillac on the ground that it had been used to transport raw materials intended for use in the manufacture of phencyclidine, a controlled substance. Appellant filed an answer on May 24 alleging that the car had been illegally seized without a warrant, in violation of the Fourth Amendment, and requesting the return of the car and $10,000 in damages. The answer was signed by Bruce Armstrong, a member of the District of Columbia bar with an office in the District of Columbia, as counsel for appellant.

On June 28, 1983, the District of Columbia sent interrogatories and a request for production of documents to appellant, in care of Mr. Armstrong at his office address. About a month later (the exact date is not clear from the record)[1] appellant moved for the return of his Cadillac and for the payment by the District of its fair rental value from the date of the seizure. He reiterated his contention that the seizure violated his rights under the Fourth Amendment. This motion was signed both by Mr. Armstrong and by Paul Evans as co-counsel. Beneath Mr. Evans' signature were an address and telephone number in Palm Beach, Florida. The District filed an opposition to the motion, and it was denied on August 22.

Appellant's answers to the District's interrogatories were not filed until September 2, more than a month after they were due. The District was dissatisfied with several of appellant's responses.[2] After

1. Although appellant's motion bore the date of July 29 and the certificate of service stated that a copy was served on the Corporation Counsel on that date, for some reason the motion was

not filed until October 12, 1983—almost two months after it was denied.

2. In response to a question about his record of arrests and convictions, appellant simply stated

various other proceedings not relevant to this appeal, the Corporation Counsel sent a letter on June 22, 1984, to attorney Evans at his Florida address, requesting more complete responses to interrogatories numbered 3, 5, 8, and 11. When this letter went unanswered,[3] the District filed a motion on August 9, 1984, to compel appellant "to give full and complete answers to interrogatories and requests for the production of documents propounded to [him on] June 28, 1983." The District asked that it be awarded reasonable expenses, including attorney's fees, and that a default decree of forfeiture be entered against the Cadillac. The motion to compel discovery was granted on August 23, to produce the requested documents within thirty days. In its order the court stated that if appellant failed to provide "full and complete answers" to interrogatories or to produce the requested documents within thirty days, his answer would be stricken and a default decree of forfeiture entered.

In the meantime, appellant's opposition to the District's motion to compel discovery, which also included a cross-motion for a trial preference date, was received by mail in the Superior Court Clerk's office on August 22. It bore the signature of Mr. Evans and had been sent by him to the court from his Florida office. On September 6, however, it was returned to Mr. Evans by the Civil Motions Commissioner because it had not been accompanied by points and authorities as required by Super.Ct.Civ.R. 12–I(e).

When Mr. Evans learned of the August 23 order granting the motion to compel

discovery, he prepared a motion for reconsideration of that order and mailed it to the Clerk's Office on August 31. That motion also was rejected by the Civil Motions Commissioner on September 11 because it was not accompanied by points and authorities or by a proposed order, because the $10 filing fee was not paid, and because "counsel must join with local counsel—see [Rule] 101(a)."

On September 13 Mr. Evans submitted an "Application to Reconsider Rejection of Motion Filed August 22 Entered September 6, 1984." Once again, no supporting points and authorities were attached, nor was there a proposed order, nor was there any indication of local counsel as required by Rule 101(a). For these reasons the motion was rejected by the Civil Motions Commissioner on September 19.[4]

On October 10, 1984, appellant had yet to comply with the August 23 discovery order. The court therefore ordered appellant's answer stricken and entered a default decree of forfeiture, making the District of Columbia the lawful owner of appellant's Cadillac. Appellant then noted this appeal.

## II

Appellant argues that *Supreme Court of New Hampshire v. Piper,* —— U.S. ——, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985), compels us to hold that Super.Ct.Civ.R. 101(a)(1) violates the Privileges and Immunities Clause of the Constitution.[5] We disagree, but we hold that Rule 101(a)(1) is invalid for another reason.

---

that "the government has available to it the records referred to herein." Asked about the circumstances of the seizure, he said that this was a "matter within the knowledge of the government." Appellant also failed to provide detailed information about his sources of income, although he admitted that he was unemployed and received "$289.50 per month SSI payment," as well as "occasional financial assistance" from another person whom he named.

3. Appellant admits in his brief that he "ignored" the Corporation Counsel's letter.

4. Mr. Armstrong, appellant's local attorney, did not sign any of the motions which were rejected by the Civil Motions Commissioner. He was at that time seriously ill, and soon thereafter he died.

5. Article IV, section 2 of the Constitution provides in part:

The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

In *Piper* the Supreme Court held that Rule 42 of the New Hampshire Supreme Court, which prohibited nonresidents from being admitted to the New Hampshire bar, was unconstitutional. A non-resident's interest in practicing law, the Court ruled, is a "privilege" protected by the Privileges and Immunities Clause, and a state may not discriminate against non-resident attorneys unless "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Id.*, 105 S.Ct. at 1279 (citation omitted). The exclusion from bar membership of attorney Piper, who lived in Vermont only 400 yards from the New Hampshire border but was otherwise "indistinguishable from other New Hampshire lawyers," *id.* at 1281 (White, J., concurring), was not justified by any substantial state interest.

Super.Ct.Civ.R. 101(a)(1), unlike the rule at issue in *Piper*, does not preclude nonresidents of the District of Columbia from becoming members of the District of Columbia bar. In fact, the District imposes no such restriction on bar membership. *See* D.C.App.R. 46(b), (c). Instead, Rule 101(a), entitled "Who may practice" (*i.e.*, in the Superior Court), provides in part:

> (1) An attorney who is a member in good standing of the District of Columbia Bar may enter an appearance, file pleadings, and practice in this Court if he either:
>
> > (i) Maintains an office for the practice of law within the District of Columbia, or
> >
> > (ii) Maintains an office in a contiguous county or city, provided that a member of the District of Columbia Bar with an office in the District of Columbia but not in the contiguous county or city who is also a member of

the bar of the highest court of the state in which the contiguous county or city is located is permitted to appear, file pleadings, and practice without being required to join of record an attorney having an office in the contiguous county or city.[6]

Mr. Evans, appellant's attorney, concededly does not meet the requirements of Rule 101(a)(1). Although he is a member in good standing of the District of Columbia bar, he does not maintain an office either in the District or in a contiguous county or city. His only office, as far as the record discloses, is in Florida.

Under *Piper*, a rule requiring non-resident lawyers to associate themselves with local counsel in individual cases would not violate the Privileges and Immunities Clause:

> [I]n those cases where the nonresident counsel will be unavailable on short notice, the State can protect its interests through less restrictive means. The trial court, by rule or as an exercise of discretion, may require any lawyer who resides at a great distance to retain a local attorney who will be available for unscheduled meetings and hearings.

105 S.Ct. at 1280. Furthermore, if local counsel must appear in court on short notice, it is reasonable to require them to sign all pleadings and motions so as to ensure that they are familiar with all aspects of the litigation; otherwise, the client is likely to be victimized by counsel's ignorance.

 The problem with Rule 101(a)(1) is not that it is unconstitutional, but that the Superior Court had no authority to adopt it in the first place. Like all Superior Court Civil Rules, it was issued pursuant to D.C. Code § 11–946 (1981), which authorizes the Superior Court to adopt rules that modify the Federal Rules of Civil Procedure, sub-

---

**6.** Rule 101(b)(2) provides:
> The Clerk shall not accept any paper signed by an attorney for filing unless the attorney is

eligible to appear and has entered his appearance as provided herein.

Eligibility to appear, of course, is determined by Rule 101(a).

ject to the "approval" of this court.[7] Section 11-946 also provides:

> The Superior Court may adopt and enforce other rules as it may deem necessary without the approval of the District of Columbia Court of Appeals if such rules do not modify the Federal Rules.

There is a limit on this broad grant of rule-making authority. This court held in *In re C.A.P.*, 356 A.2d 335, 343, *rehearing en banc denied*, 359 A.2d 11 (D.C.1976), that notwithstanding section 11-946, the Superior Court may not adopt a rule which abridges any substantive right. That is what it has done in this instance, and for that reason Rule 101(a)(1) is a nullity.

■ D.C.Code § 11-2501(b) (1981) states unconditionally that "[m]embers of the bar of the District of Columbia Court of Appeals shall be eligible to practice in the District of Columbia courts." By requiring Mr. Evans—or any member of the District of Columbia bar—to maintain an office in the District or in a contiguous county or city, the Superior Court has restricted his right to practice in the District of Columbia courts, a right guaranteed by section 11-2501(b). Under *In re C.A.P.*, the Superior Court was without power to impose such a restriction; its adoption of Rule 101(a)(1) was *ultra vires*. The eligibility of any member of the District of Columbia bar to practice in the District of Columbia courts is absolute under D.C.Code § 11-2501(b), subject only to the disciplinary power of *this* court under section 11-2501(a).[8]

We therefore hold that Super.Ct.Civ.R. 101(a)(1) is void and unenforceable.

### III

Appellant also argues that the rejection of his motions by the Civil Motions Commissioner was arbitrary, capricious, and in excess of her authority. This argument is without merit.

Three motions submitted by Mr. Evans on behalf of appellant, pertinent to this appeal, were returned to him by the Civil Motions Commissioner without being filed, and thus they were never considered by the trial court. All three were rejected, at least in part, because they were not accompanied by points and authorities as required by Super.Ct.Civ.R. 12-I(e). This rule states in part:

> Each motion shall be accompanied by the specific points and authorities to support the motion, including where appropriate a concise statement of material facts.... A statement of opposing points and authorities shall be filed and served within 10 days or such further time as the Court may grant. If a statement of opposing points and authorities is not filed within the prescribed time, the Court may treat the motion as conceded.

Although appellant challenges the validity of Rule 101(a)(1), which we have discussed in part II of this opinion, he does not contest the validity or the applicability of Rule 12-I(e).

■ That appellant failed to comply with Rule 12-I(e) is beyond dispute. He offers no logical reason why the rule should be waived in his case, and we can find none. We therefore hold that the rejection of his motions by the Civil Motions Commissioner, as an agent of the court, was entirely proper.

### IV

Finally, appellant argues that the August 23 order granting the District's motion to compel discovery, and hence the October 10

7. "Approval" in this context means only that this court must give its sanction to any rule which modifies the Federal Rules of Civil Procedure. Since Rule 101 deals with a matter not covered by the Federal Rules, it was never "approved" by this court under section 11-946.

8. D.C.Code § 11-2501(a) (1981) provides:
 The District of Columbia Court of Appeals shall make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion.

default decree based upon it, were erroneously entered. We hold that the trial court properly granted the motion to compel, but that the default decree was an abuse of discretion and must be reversed.

■ A trial court has broad discretion in determining whether to grant or deny a motion to compel discovery. Its decision either way in a particular case will not be disturbed on appeal unless there has been an abuse of discretion resulting in prejudice. *White v. Washington Metropolitan Area Transit Authority*, 432 A.2d 726, 728–729 (D.C.1981).

■ In this case the trial court acted well within its discretion in granting the District's motion to compel. The applicable rule states that if "a party fails to answer an interrogatory ... the discovering party may move for an order compelling an answer...." Super.Ct.Civ.R. 37(a)(2). It further provides that "[f]or purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer." Super.Ct.Civ.R. 37(a)(3). Appellant evasively answered at least two of the District's fourteen interrogatories, and possibly as many as four; see note 2, *supra*. Even now appellant offers no reason for the inadequacy of his answers, and we can discern none from the record. We find no abuse of discretion whatever in the order directing appellant to provide more complete answers.

Whether the court erred in entering a default decree for failure to comply with the August 23 order is a separate question. Under Rule 37(b)(2)(C), the trial court was authorized to render "a judgment by default against the disobedient party...." We have repeatedly held that a trial court has broad discretion in determining what sanctions to apply under Rule 37 for non-compliance with discovery orders. *E.g.,*

*Ungar Motors v. Abdemoulaie*, 463 A.2d 686, 687 (D.C.1983). However, the extreme remedy of dismissal or default judgment "should be granted only upon a showing of severe circumstances." *Koppal v. Travelers Indemnity Co.*, 297 A.2d 337, 339 (D.C. 1972) (citation omitted). Before either of these sanctions may be imposed, the trial court must first "consider whether less severe and more appropriate sanctions ... [are] justified." *Id.; see Shimer v. Edwards*, 482 A.2d 399, 400–401 (D.C.1984). Moreover, the moving party must demonstrate that the failure to comply with a discovery request or order "resulted in some degree of prejudice before the court may forego lesser sanctions...." *Braxton v. Howard University*, 472 A.2d 1363, 1365 (D.C.1984).[9] Thus, "[w]hile a trial court is not required to state its reasons for choosing dismissal or a default judgment rather than some lesser sanction, a court which fails to state any reasons at all runs a serious risk that its decision will not withstand appellate scrutiny." *Ungar Motors, supra,* 463 A.2d at 689.

■ We hold that the entry of a default decree of condemnation in this case as a sanction for appellant's failure to comply with the discovery order was a "penalty too strict ... under the circumstances." *Dodson v. Evans*, 204 A.2d 338, 341 (D.C.1964). Lesser sanctions were available under Rule 37(b)(2), such as an award of expenses, including attorney's fees, or even an adjudication of contempt. Moreover, the District made no showing of prejudice, as our cases have required before "draconian" sanctions as may be imposed. *Braxton v. Howard University, supra,* 472 A.2d at 1365–1366. In the circumstances of this case, the default decree was an abuse of discretion.

The judgment is accordingly reversed. This case is remanded for consideration by

---

9. There is "a very narrow exception" to the requirement that prejudice must be affirmatively shown. We have recognized that "an extraordinarily long delay in complying with a discovery request" may be "so inherently prejudicial as to warrant dismissal [or a default judg-

ment] under Rule 37." *Braxton v. Howard University, supra,* 472 A.2d at 1366 n. 4; *see Massengale v. 3M Business Products Sales, Inc.,* — A.2d —, — — —, No. 84–342, slip op. at 11–12 (D.C. December 30, 1985).

the trial court of lesser sanctions for appellant's non-compliance with the order compelling discovery, and for further proceedings thereafter consistent with this opinion.

*Reversed and remanded.*