Barry L. FLEMMING, Appellant,

v.

UNITED STATES, Appellee.

Marvin BROWN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 86–856, 86–864.

District of Columbia Court of Appeals.

Argued Jan. 12, 1988.

Decided Aug. 29, 1988.

---

David C. Gray, appointed by this court, for appellant Flemming.

Ellen Pearlman, Supervising Atty., with whom Steven H. Goldblatt, Director, Appellate Litigation Program, Georgetown University Law Center, Washington, D.C., Dori Bernstein, Supervising Atty., Lesley Anne Fair, Appellate Law Fellow, and Janis Brennan, John Monahan, and John Bickerman, Student Counsel, were on the brief, for appellant Brown.

Jody Goodman, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell and William M. Jackson, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, TERRY and ROGERS, Associate Judges.

TERRY, Associate Judge:

Appellant Brown was convicted of distributing cocaine, and both appellants and a co-defendant, Marcus Thompson, were convicted of possession of cocaine with intent to distribute it, all in violation of D.C.Code § 33–541(a)(1) (1987 Supp.). While the jury was deliberating, the trial court excused one juror whose impartiality appeared to be in doubt and allowed the remaining eleven jurors, over objection, to return a verdict. In excusing the juror, the court relied on a recently amended rule, Super.Ct.Crim.R. 23(b), which permits the court in its discretion to excuse a juror during deliberations "for just cause," leaving only eleven jurors to decide the case. On appeal from their convictions, Flemming and Brown[1] challenge this decision on several grounds. We hold that Rule 23(b), as amended, is invalid, and accordingly we reverse the convictions of both appellants.

1. Thompson did not appeal.

I

Appellants were arrested along with two other persons after two police officers, watching from a concealed observation post, saw the four of them engaged in what appeared to be a drug transaction. Flemming was seen conversing with a man named Moore, who handed him some money. Flemming then walked up the street a short distance and gave the money to Marcus Thompson. Thompson, followed by Flemming, went a little farther up the street and spoke to Brown, who then handed Flemming several small white objects. The officers radioed descriptions of the four men to an arrest team, who promptly appeared on the scene and arrested all four. Before his arrest, Flemming dropped some money on the ground; an officer recovered it and found that it totaled $68. From Flemming's pocket another officer recovered five plastic zip-lock bags of cocaine and a Sucrets box containing seven empty plastic bags with cocaine residue inside. Brown likewise dropped a change purse to the ground. His arresting officer seized it and found that it contained nineteen plastic bags of cocaine. The officer also found a bag of cocaine and $59 in Brown's pocket.

Detective Lawrence Coates, called as an expert witness, testified that the quantity and packaging of the cocaine found on both appellants showed their intent to distribute the cocaine. Coates also said that the actions of both men constituted a "classic drug operation" with Flemming and Brown in the respective roles of "runner" and "holder."

Appellants presented no evidence. Thompson, their co-defendant, took the stand and denied being involved in any drug transaction.

The jury was instructed at the end of the fifth day of trial and began to deliberate the following morning. At about 1:45 p.m. the court received a note from the jury stating:

A juror needs to know where the expert, Mr. Coates, lives. If he lives on [a certain street] in the 1400 block, he is a

neighbor of hers, and she believes that that may affect her ability to be unbiased as it relates to his testimony.

Since neither the prosecutor nor the court could reach Detective Coates at that moment, the court agreed to "assume that he does live in the area" of the juror's home. Both appellants promptly moved for a mistrial, which the court denied.

The court then called the juror into the courtroom and questioned her outside the presence of the other jurors. The juror said that she and her mother lived across the street from Detective Coates and his wife and that her mother had once attended a party in his house. She did not know his name before the trial, however, and had not recognized him until "sometime during his testimony, toward the end of it," when she realized that he might be her neighbor (though she was "not really sure" even then). The juror acknowledged asking the other jurors if she should tell the court that Coates might be a neighbor, but she said she had not voiced her opinion of him or his testimony.

After all counsel had a chance to question the juror, the court excused her from further participation in the case. The next morning, after researching the issue, the court ruled that there had been good cause to excuse her. The court said that it had specifically refrained from asking the juror if she could render a fair and impartial verdict, having concluded from the note that her status as Coates' neighbor might affect her ability to remain unbiased with respect to his testimony. Defense counsel again moved for a mistrial, which the court denied, stating that there was not even "any hint" that the other jurors had been tainted. Concluding that the burden of a five-day trial on the court was "severe," the court decided to invoke Super.Ct.

Crim.R. 23(b) and so to allow the remaining eleven jurors to continue deliberating. The court then instructed the eleven jurors to resume their deliberations, and a few hours later they returned a verdict.

## II

Super.Ct.Crim.R. 23(b) states:

> *Jury of less than twelve.* Juries shall be of twelve (12) but any time before verdict the parties may stipulate in writing with the approval of the Court that the jury shall consist of any number less than twelve (12) or that a valid verdict may be returned by a jury of less than twelve (12) should the Court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such stipulation, if the Court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the Court a valid verdict may be returned by the remaining eleven (11) jurors.

The second sentence was added in 1985, making the Superior Court rule identical to its federal counterpart, Fed.R.Crim.P. 23(b), which was similarly amended in 1983.

Appellants argue that Rule 23(b) is invalid because it conflicts with D.C.Code § 16–705(c) (1981),[2] which guarantees twelve-person juries absent stipulation by the parties. They cite D.C.Code § 16–701 (1981)[3] as requiring that Superior Court rules be consistent with pertinent statutes. They also claim that Rule 23(b) violates the principle that rules of procedure cannot alter substantive law. The government replies that the rule and section 16–705(c) do not conflict but may be read consistently. If the two do conflict, the government argues, the rule would supersede the statute because D.C.Code § 11–946 (1981)[4] dictates

---

**2.** D.C.Code § 16–705(c) provides:
 The jury shall consist of twelve persons, unless the parties, with the approval of the court and in the manner provided by rules of the court, agree to a number less than twelve.

**3.** D.C.Code § 16–701 provides:
 The Superior Court may make such rules and regulations for conducting business in the Criminal Division of the court, *consistent with stat-*

*utes applicable to such business* and in the manner provided in section 11–946, as it may deem necessary and proper. [Emphasis added.]

**4.** D.C.Code § 11–946 provides in pertinent part:
 The Superior Court shall conduct its business according to ... the Federal Rules of Criminal Procedure ... unless it prescribes or adopts rules which modify those Rules. Rules which modify the Federal Rules shall be submitted for

that the Superior Court follow the Federal Rules of Criminal Procedure, and under 18 U.S.C. § 3771 (1982) federal rules take precedence over existing, inconsistent statutes.[5]

 We agree with appellants that Rule 23(b) is invalid because it conflicts with section 16–705(c) and thereby violates section 16–701. We recognize that courts have a duty to reconcile allegedly conflicting statutes and to give effect to both whenever possible. *District of Columbia v. Smith*, 329 A.2d 128, 130 (D.C.1974); *accord, Morton v. Mancari*, 417 U.S. 535, 550–551, 94 S.Ct. 2474, 2482–2483, 41 L.Ed. 2d 290 (1974). Assuming *arguendo* that the same duty exists when a court is faced with a conflict between a statute and a rule, the court need not attempt to reconcile one with the other if doing so would deprive either of its "essential meaning." *District of Columbia v. Smith, supra*, 329 A.2d at 130.

The government asks us to read Rule 23(b) and section 16–705(c) consistently by interpreting the latter to require twelve jurors at the empaneling of the jury and at the beginning of deliberations, but not necessarily at the return of the verdict. We find this interpretation strained at best and conclude that it robs the statute of its essential meaning. Under a common-sense reading of section 16–705(c), a jury of twelve means twelve persons who hear the evidence, deliberate, and vote on a verdict—in other words, twelve persons who function as jurors throughout the entire trial from beginning to end. The Kansas Court of Appeals, in *Schultz v. Kansas Gas & Electric Co.*, 7 Kan.App.2d 500, 502, 644 P.2d 484, 486 (1982), regarded this concept as "fundamental"; so do we.

In this case it is plain to us that the rule and the statute are in direct conflict. Section 16–705(c) guarantees twelve jurors to every defendant, and to the government, unless they both expressly consent to a lesser number. Rule 23(b), on the other hand, empowers the court to allow eleven-person juries even without the consent of the parties. Had such a conflict arisen in federal court between Fed.R.Crim.P. 23(b) and a federal statute, the rule would prevail over the statute because of 18 U.S.C. § 3771. But the situation is different in the District of Columbia courts. D.C.Code § 16–701 demands that all Superior Court rules be consistent with statutes applicable to the business of the court. The second sentence of Rule 23(b) is void because it violates this statutory provision.

Contrary to the government's claims, 18 U.S.C. § 3771 does not apply to the Superior Court through D.C.Code § 11–946. The latter statute requires the Superior Court to follow federal rules of procedure, but it does not also impose on the Superior Court the federal policy, codified in 18 U.S.C. § 3771, that rules supersede inconsistent statutes. Nor does section 11–946 grant the Superior Court (or this court) the power to overturn any District of Columbia statute by adopting a court rule. Moreover, 18 U.S.C. § 3771 is expressly limited to rules governing proceedings in the United States District Courts, in the Supreme Court of Puerto Rico, and before United States Magistrates. There is no counterpart to 18 U.S.C. § 3771 in the District of Columbia Code that would allow Superior Court rules to nullify or take precedence over District of Columbia statutes.[6]

the approval of the District of Columbia Court of Appeals, and they shall not take effect until approved by that court.

**5.** 18 U.S.C. § 3771 provides in pertinent part: The Supreme Court of the United States shall have the power to prescribe, from time to time, rules of ... procedure ... in the United States district courts.... Such rules shall not take effect until they have been reported to Congress.... All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

**6.** It is irrelevant to this discussion that Superior Court rules which are identical to their federal counterparts have the force and effect of law. *See Varela v. Hi–Lo Powered Stirrups, Inc.*, 424 A.2d 61, 65 (D.C.1980) (en banc); *Campbell v. United States*, 295 A.2d 498, 501 (D.C.1972). This is merely a principle of statutory construction. It does not mean that rules of procedure become the equivalent of statutes which may override other statutes with which they are in conflict.

The government asserts that, had the Superior Court not adopted Rule 23(b), it would be bound by D.C.Code § 11–946 to follow Fed.R.Crim.P. 23(b). We reject this argument because its premise is unsound. By deciding not to modify the Federal Rule, the Superior Court did not "adopt" a rule of its own but merely allowed the Federal Rule to take effect by operation of section 11–946. The result of this decision is that, as a matter of law, Superior Court Rule 23(b) *is* Federal Rule 23(b), not a conceptually distinguishable rule with identical language. Thus we must decide whether a Federal Rule which, by Act of Congress, becomes a Superior Court rule may supersede an inconsistent provision of the District of Columbia Code. We hold that it may not. Once it becomes a Superior Court rule, it must behave like a Superior Court rule; that is, under section 16–701, it must be consistent with any statute "applicable to [the court's] business." Section 16–705(c) is clearly such a statute. Therefore, reading sections 11–946, 16–701, and 16–705(c) together so as to give effect if possible to all three sections,[7] we hold that to the extent they are or may be in conflict, the more specific provisions of sections 16–701 and 16–705(c) limit the broad language of section 11–946.

We reach this conclusion for two reasons. First, as we have said, this court has a duty to construe two statutes which appear to be in conflict so as to give effect to both. However, when a statute of broad general application (such as section 11–946) is inconsistent with a more specific provision (such as section 16–705(c)), the latter provision "must govern or control, as a clearer and more definite expression of the legislative will...." 82 C.J.S. *Statutes* § 347(b) (1953), quoted with approval in *District of Columbia v. Linda Pollin Memorial Housing Corp.,* 313 A.2d 579, 583 (D.C.1973); *accord, Martin v. United States,* 283 A.2d 448, 450–451 (D.C.1971) (citing authorities). Second, sections 11–946, 16–701, and 16–705(c) were all part of the same congressional enactment, the District of Columbia Court Reorganization Act of 1970.[8] In such circumstances our duty is all the greater to construe the separate sections harmoniously "so that no part of [the Act] will be either redundant or superfluous." *Office of People's Counsel v. Public Service Commission,* 477 A.2d 1079, 1084 (D.C.1984) (citations omitted). This is a "fundamental rule of statutory construction." *Tuten v. United States,* 440 A.2d 1008, 1010 (D.C.1982), *aff'd,* 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983). When this is impossible, however, we must give precedence to the more specific language. "However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the same enactment.'" *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.,* 322 U.S. 102, 107, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944) (citation omitted); *accord, e.g., Howard v. Riggs National Bank,* 432 A.2d 701, 709 (D.C.1981).[9]

The government makes the additional argument that this court has already determined the validity of Rule 23(b). It notes that the Superior Court submitted the proposed amendment of Rule 23(b) to this court "for approval," and that this court, by allowing the amendment to go into effect,[10] must have determined that the rule

---

**7.** *See Morton v. Mancari, supra,* 417 U.S. at 551, 94 S.Ct. at 2483; *District of Columbia v. Smith, supra,* 329 A.2d at 130.

**8.** Pub.L. No. 91–358, §§ 111, 145(d)(1), 145(d)(4), 84 Stat. 473, 487, 555, 556 (1970).

**9.** We were advised at oral argument that there is a bill pending before the District of Columbia Council to amend section 16–705(c) so as to bring it into conformity with the 1985 amendment to Rule 23(b). Although the Council is prohibited by D.C.Code § 1–233(a)(4) (1981) from amending any provision of title 11 of the Code, including section 11–946, it is not barred

from amending section 16–705, which is in title 16.

**10.** On July 1, 1985, after staying the effectiveness of the amendment to Rule 23 at the request of the Superior Court, this court entered an order stating in part:

[A]s it now appears that the Superior Court does not propose to modify the amended Federal Rule of Criminal Procedure, it is

ORDERED that the stay entered and extended by this court with respect to Superior Court Criminal Rule 23 is hereby terminated, and the amendment to Superior Court Crimi-

"governs the issue of unstipulated dismissal of a juror in Superior Court." The government misunderstands this court's role in the promulgation and adoption of Superior Court rules of procedure. Our function with respect to changes in Superior Court rules is precisely defined and limited by D.C.Code § 11–946. As we made clear in *Haynes v. District of Columbia,* 503 A.2d 1219, 1223 n. 7 (D.C.1986), our "approval" of any Superior Court rule "means only that this court must give its sanction to any rule which modifies the Federal Rules of Civil [or Criminal] Procedure." Since the 1985 amendment did not modify the Federal Rule but, on the contrary, made the Superior Court rule identical to it, this court could neither "approve" nor "disapprove" the amendment. The most we could do was to stay its effectiveness until the Superior Court could decide whether it wished to accept the amendment or to modify it, and that is precisely what we did.

We hold, as a matter of statutory construction, that the second sentence of Rule 23(b) is invalid because it conflicts on its face with D.C.Code § 16–705(c), and because D.C.Code § 16–701 requires us to give precedence to the statute. *See Haynes v. District of Columbia, supra,* 503 A.2d at 1223; *Sanker v. United States,* 374 A.2d 304, 310 (D.C.1977) ("the rule may not override the statute"); *In re C.A.P.,* 356 A.2d 335, 343–344, *rehearing en banc denied,* 359 A.2d 11 (D.C.1976); *see also Washington–Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,* 263 U.S. 629, 635–636, 44 S.Ct. 220, 222–23, 68 L.Ed. 480 (1924). The judgment of conviction is reversed, and this case is remanded for a new trial consistent with D.C.Code § 16–705(c).

*REVERSED AND REMANDED.*

nal Rule 23 effected by the amendment to Federal Rule of Criminal Procedure 23 is thus

deemed by operation of D.C.Code § 11–946 to be in effect from this date.