*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

**Nos. 09-CF-1438 & 10-CF-54**

MICHAEL D. TANN,                   Appellant,          **CF1-22807-07**

**Nos. 09-CF-1439 & 10-CF-55**

LANNELL N. COOPER,                 Appellant,          **CF1-22940-07**

**No. 09-CF-1450**

ANTONIO ARNETTE,                   Appellant,          **CF1-22893-07**

**No. 09-CF-1469**

JAMES E. RUSHING,                  Appellant,          **CF1-3359-08**

**No. 09-CF-1482**

SAQUAWN L. HARRIS,                 Appellant,          **CF1-22962-07**

v.

UNITED STATES,                     Appellee.

BEFORE:   BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN, FISHER, THOMPSON, BECKWITH, and EASTERLY, *Associate Judges*.

**O R D E R**
(DECIDED — April 11, 2019)

On consideration of appellant Michael D. Tann's motion for appointment of new counsel to file a petition for writ of certiorari in the Supreme Court of the United States; the motions by appellants Tann and Saquawn L. Harris for reconsideration

of the denial of their petitions for rehearing en banc; the motion by Mr. Harris "for prompt resolution of his pending motion to reconsider the denial of rehearing en banc to allow for Supreme Court review"; the joint motion by Mr. Tann and Mr. Harris to stay issuance of the mandate; and the motion by appellant Lannell N. Cooper to stay issuance of the mandate, it is

ORDERED that the motions by Mr. Tann and Mr. Harris for reconsideration of the denial of their petitions for rehearing en banc are denied.  It is

FURTHER ORDERED that the time for filing a petition for writ of certiorari in the United States Supreme Court and the time for seeking an extension of time in which to file such a petition having expired, *see* Sup. Ct. R. 13, Mr. Tann's motion for appointment of new counsel to file a petition for writ of certiorari is denied as moot.  It is

FURTHER ORDERED that the joint motion by Mr. Tann and Mr. Harris to stay issuance of the mandate is denied as moot, as Mr. Harris's petition for writ of certiorari was denied on December 4, 2017, and as Mr. Tann's time for filing a petition for writ of certiorari or for seeking an extension of time in which to file such a petition has expired.  It is

FURTHER ORDERED that Mr. Harris's "motion for prompt resolution of his pending motion to reconsider the denial of rehearing *en banc* to allow for Supreme Court review" is denied as moot.  It is

FURTHER ORDERED that Mr. Cooper's motion to stay the mandate is denied as moot, as his petition for writ of certiorari was denied on October 2, 2017.  It is

FURTHER ORDERED that the Clerk shall issue the mandates in these consolidated appeals forthwith.

**PER CURIAM**

STATEMENT OF BLACKBURNE-RIGSBY, *Chief Judge*, and FISHER and THOMPSON, *Associate Judges*, in support of denying appellant Tann's and appellant Harris's motions for reconsideration of the denial of rehearing en banc.

A majority of the Board of Judges[1] voted to reaffirm that this court will continue to adhere to the "absolute majority" rule for voting on en banc petitions until the Rules Committee considers and weighs, following the regular Rules process, whether to "prescribe or adopt modifications" to our rules to be consistent with Federal Rule of Appellate Procedure 35(a). Under the "absolute majority" rule, recused judges are counted as "judges in regular active service" for the purpose of voting on petitions for rehearing en banc. *See* D.C. Code § 11-705(d) (2012 Repl.) ("A rehearing before the court in banc may be ordered by a majority of the judges of the court in regular active service.") and D.C. App. R. 35(a) ("A majority of the judges who are in regular active service may order that an appeal or other proceeding be heard or reheard en banc.").

At the time appellants' petitions for rehearing en banc were denied, there were eight judges on the court in "regular active service." Judge McLeese recused from the case. Then-Associate Judge, now-Chief Judge Blackburne-Rigsby and Associate Judges Fisher and Thompson voted to deny rehearing en banc. Former Chief Judge Washington, along with Associate Judges Glickman, Beckwith, and Easterly would have granted the petitions for rehearing en banc. Judges Beckwith and Easterly decided to participate in the resolution of the petition upon an April 28, 2016, motion by appellant Harris requesting that they, and Judge McLeese, not recuse themselves when the general practice had been that they recuse from cases that were pending in the Public Defender Service, and the United States Attorney's Office, during their prior employment at each of these agencies. Judge Beckwith and Judge Easterly, upon considering appellant Harris's motion, decided to un-recuse themselves from the case. Judge McLeese decided to remain recused. The three judges issued a joint statement on June 23, 2016, explaining their individual reasons for either recusing or not recusing.

---

[1] The D.C. Court of Appeals, at full complement, consists of "a chief judge and eight associate judges." D.C. Code § 11-702 (2012 Repl.). The "Board of Judges" of the D.C. Court of Appeals is defined in the court's Internal Operating Procedures as "the judges of the court in regular active service meeting together in their administrative capacity," i.e., the Chief Judge and eight Associate Judges. D.C. App. IOP II.A. Accordingly, the term "Board of Judges" is synonymous with the term "the court" as it is defined in our statutes. The Board of Judges or "the court" has the statutory authority to "prescribe[] or adopt[] modifications" to the Federal Rules of Appellate Procedure in setting the practice rules of the D.C. Court of Appeals. D.C. Code § 11-743 (2012 Repl.).

Under the "absolute majority" approach, the four votes of then-Chief Judge Washington and Associate Judges Glickman, Beckwith, and Easterly did not constitute a majority of votes of the eight judges in regular active service on the court sufficient to grant the petitions. (There were eight judges in regular active service because Judge McLeese was counted in the base number of active judges, although he was recused).

The court presently has seven judges in regular active service to consider the motions for reconsideration of the denial of rehearing en banc.[2] Chief Judge Blackburne-Rigsby and Associate Judges Fisher and Thompson vote to deny reconsideration, while Associate Judges Glickman, Beckwith, and Easterly vote to grant reconsideration. Judge McLeese remains recused. Therefore, appellants' motions for reconsideration are denied because Judges Glickman, Beckwith, and Easterly's three votes to grant reconsideration do not constitute a majority vote of the court of seven judges "in regular active service." Further, although our colleagues favor the "case majority" approach, which would exclude judges in regular active service who are recused, the motions for reconsideration would still be denied because their three votes would not constitute a majority of the six non-recused judges.[3]

This court did not by operation of law automatically (or inadvertently) adopt the "case majority" approach for purposes of voting on petitions for rehearing en banc. The 2005 amendment to Rule 35(a) to the Federal Rules of Appellate Procedure adopted a "case majority" approach for voting on petitions for rehearing

---

[2] Former Chief Judge Washington took senior status on March 20, 2017.

[3] Our colleagues disagree with this observation, suggesting that had the court followed the "case majority" approach when voting on the original petitions for rehearing en banc, the court would not be in the present position of resolving a motion for reconsideration. Moreover, they further posit that, if the six currently un-recused judges were considering a motion for reconsideration where rehearing was initially "erroneously" denied, then all of the judges would now, presumably, vote to grant reconsideration. These hypothetical scenarios are flawed, however, because this court has not previously followed the "case majority" approach. Moreover, the court last year voted to continue to adhere to the "absolute majority" approach until further notice. Specifically, the court voted to refer the issue to the court's Rules Committee. The Rules Committee will consider the matter and the Board of Judges will thereafter vote on any potential rules changes which will then be circulated for notice and comment as is the court's usual practice.

en banc, whereby recused judges are not counted as judges in regular active service on the court in calculating whether a majority of judges have voted to hear a case en banc. This court has not yet determined whether it will adopt this revision for the D.C. Court of Appeals Rules, and has referred this issue to the court's Rules Committee for review and consideration. The Federal Rules Advisory Committee adopted the change to Fed. R. App. P. 35(a) in an effort to harmonize the language used in the first and second sentences of 28 U.S.C. § 46(c). The Federal Rules Advisory Committee found it "clear that [the phrase] 'all circuit judges in regular active service' in the second sentence does not include disqualified judges" and determined that the "nearly identical" phrase in the first sentence of § 46(c) ("Cases and controversies shall be heard and determined by a court or panel of not more than three judges . . . , unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in regular active service") therefore "should be interpreted in the same way."

By contrast, D.C. Code § 11-705(d) contains language that our colleagues concede is *not* identical to the language of federal statute 28 U.S.C. § 46(c). Therefore, our Rules Committee will consider whether the language of D.C. App. R. 35(a) presents the same need for harmonization with the D.C. statute that led the Federal Rules Advisory Committee to recommend adopting the "case majority" interpretation in the federal context, even though previously only a minority of the federal courts of appeals had followed the "case majority" approach. While D.C. Code § 11-743 (2012 Repl.) typically requires that the D.C. Court of Appeals "shall conduct its business according to the Federal Rules of Appellate Procedure," the exception to this requirement is where the D.C. Court of Appeals "prescribes or adopts modifications of those rules." *Id.*

By order dated April 25, 2005, this court stayed the 2005 amendments to the Federal Rules of Appellate Procedure. This court's order of June 24, 2016, which adopted some of the amendments while rejecting others, did not address Fed. R. App. P. 35(a). In particular, it did not address the federal courts' adoption of the case majority rule, which was only in the comments section for the federal courts' 2005 amendments. This court did not, by omission or inadvertently, adopt the 2005 amendment to Fed. R. App. P. 35(a). This court's June 24, 2016, order which neither adopted nor rejected the 2005 amendments to Rule 35(a) was not, and cannot, be considered a passive delegation of this court's clear authority to "prescribe" or

"modify" its own appellate rules of practice. *See* D.C. Code § 11-743.[4]  The court's omission in referencing Fed. R. App. P. 35(a) in the 2016 order reflects that the court has yet to deliberate the merits of adopting the 2005 amendment to Fed. R. App. 35(a) and the case majority approach for this court.  Accordingly, the amendments to Fed. R. App. 35(a) remain stayed pursuant to this court's April 25, 2005, order. Contrary to our colleagues' opposing statement, the Board of Judges did not need to notify the public that the court voted to continue to adhere to the "absolute majority" rule following the February 27 Board of Judges vote because the vote was merely intended to continue to stay the amendments to Fed. R. App. 35(a) pending the Rules Committee process.  *Post* at 10.  We did not promulgate any changes or modifications to our existing en banc voting procedures by the Board of Judges' vote.  Furthermore, we take issue with our colleagues' characterization that we had somehow "resurrected" the "absolute majority" rule by virtue of the February 27 vote because that implies that the court had previously abandoned the "absolute majority" rule.  *Post* at 10-11.  On the contrary, we have consistently applied the "absolute majority" rule before the Board of the Judges voted to "re-affirm" the rule on February 27 until further notice, including when the court voted on appellant Tann's and Harris's en banc petitions.

To clarify, the court has not yet decided whether to adopt, modify, or reject the "case majority" approach found in the comments of Fed. R. App. P. 35(a).  This court's Rules Committee will consider and weigh, following the regular Rules process, the merits of both the "absolute majority" and "case majority" approaches in determining whether to continue to adhere to the "absolute majority" rule or whether to "prescribe or adopt modifications" to our rules to be consistent with Federal Rule of Appellate Procedure 35(a).

We note that, just as there may be compelling reasons for this court to adopt the "case majority" approach, there may also be compelling reasons why this court might choose to continue to adhere to the "absolute majority" approach.  It is important to remember that, prior to the 2005 amendments to Fed. R. App. 35(a), eight of the thirteen United States Circuit Courts applied the "absolute majority" approach.  Only four applied the "case majority" approach, with the Third Circuit

---

[4]  To conclude, as our colleagues do, that this court has adopted a change in our Rule 35(a) by omission would not only be unprecedented, but would run counter to and defeat the purpose of this court's longstanding practice of seeking public comment on proposed rule changes and expressly stating which rule changes the court has decided to adopt or modify from the federal rules.

adopting a modified "case majority" approach. *See* Marie Leary, Defining the "Majority" Vote Requirement in Federal Rule of Appellate Procedure 35(a) for Rehearings En Banc in the United States Courts of Appeals, at 7 (Federal Judicial Center 2002). Then-Chief Judge Wilkinson of the Fourth Circuit, in defense of the "absolute majority" approach, explained that this approach "spares us the resource drain of too many en banc hearings and, more importantly, safeguards the circuit against the imposition of an en banc ruling which does not actually reflect the views of a majority of judges on the circuit . . . ." *Id.* at 10. Likewise, then-Chief Judge Mayer of the Federal Circuit explained that the "absolute majority" approach ensured that the court's "en banc decision would reflect the views of a majority of judges" and not "turn on the vagaries of recusal and unavailability." *Id.* These policy rationales in favor of the "absolute majority" approach, although ultimately rejected in the federal courts, may or may not apply with the same force to the District of Columbia Court of Appeals, given the differences in the District and federal statutes, and given that, other than the First Circuit, every federal Circuit Court has, at full strength, many more judges than the D.C. Court of Appeals, *see* 28 U.S.C. § 44 (2009) (noting that the number of circuit judges varies from six in the First Circuit, to eleven on the D.C. Circuit, to twenty-nine in the Ninth Circuit). For many of the federal Circuit Courts, one or two recusals under either the "case majority" or the "absolute majority" approach might not alter the final en banc vote, as it potentially could in this court.

STATEMENT OF BECKWITH, *Associate Judge*, with whom GLICKMAN and EASTERLY, *Associate Judges*, join, in support of granting Mr. Tann's and Mr. Harris's motions for reconsideration of the denial of rehearing en banc.

On March 3, 2017, this court denied appellants' request for en banc rehearing of their convictions for murder and other offenses, and did so in an order indicating that one judge was recused and that four of the seven judges who were voting would have granted the petitions of appellants Michael Tann and Saquawn Harris. This order left its readers to figure out how a four-to-three vote in appellants' favor nonetheless resulted in the denial of their request for rehearing. Aside from the statute setting the quorum of the en banc court at six judges, *see* D.C. Code § 11-706 (2012 Repl.), there is no case law, statute, or rule that explicitly informed the public or any litigant that the votes of a majority of the nonrecused judges would be insufficient to secure en banc review in the District of Columbia Court of Appeals.

In their motions for reconsideration, appellants Tann and Harris surmise that this counterintuitive outcome was based on what in appellants' view is a mistaken reading of D.C. Code § 11-705(d) (2012 Repl.), which provides that "[a] rehearing

before the court in banc may be ordered by a majority of the judges of the court in regular active service." That is, appellants correctly infer that the court counted the recused judge as a judge "in regular active service" and therefore concluded that five votes out of eight, not four out of seven, were needed to grant rehearing en banc— an approach often called the absolute majority rule. The *case* majority rule, on the other hand, requires only a majority of the *nondisqualified* judges to grant en banc review (assuming, again, that the quorum requirement is met).

Appellants now ask us to reconsider the legal effect of the court's four-to-three vote, presenting a powerful claim that this vote entitled them to have en banc review granted, not denied. I agree, and would therefore grant appellants' motions for reconsideration, which now fail because this court is evenly divided.[5]

---

[5] Our colleagues observe that the judges in favor of granting Mr. Tann's and Mr. Harris's rehearing petitions now lack the votes to do so even under the case majority rule given that one of the four of us has become a senior judge. See *ante* at 4 & n.3. But in a world in which the court were openly and officially operating under the case majority rule, the 4-3 vote in favor of rehearing would have so unmistakably reflected a vote granting rehearing that three judges presumably would not be voting against reconsideration of the denial of rehearing. Put differently, resolution of the motion for reconsideration does not amount to an updated re-vote on the petition for rehearing en banc with six judges instead of seven; the effect of granting the reconsideration motion would be to confirm that on March 3, 2017, a 4-3 majority had *granted,* not denied, rehearing en banc. Our colleagues' reply to this— that "[t]hese hypothetical scenarios are flawed because . . . this court has not previously followed the 'case majority' approach"—jettisons the hypothetical that formed the basis of their initial point.

Our colleagues also mention that in response to one appellant's request that Judges Easterly and McLeese and I not recuse ourselves in this case, Judge McLeese decided to remain recused while Judge Easterly and I decided to participate in the resolution of the petitions for rehearing en banc. As the three of us explained at the time in a joint statement, our usual practice is to recuse ourselves from all cases that were pending in the United States Attorney's Office, as to Judge McLeese, or the Public Defender Service, as to Judge Easterly and me, during our employment at those agencies. We further noted that this custom is primarily a measure of expedience that is broader than what the Code of Judicial Conduct requires and acknowledged that, in light of "the important interests of both litigants and the judicial system" in en banc review, an exception to this practice was warranted.

A close look at recent developments affecting our en banc voting procedures reveals clear-cut grounds for concluding that at the time we voted on appellants' rehearing petition in this case, we were bound by statute and by a prior order of this court to apply the case majority rule and to grant the appellants' request for rehearing. Although this court has discretion to shape the rules under which it operates, D.C. Code § 11-743 (2012 Repl.) states that this court "shall conduct its business according to the Federal Rules of Appellate Procedure unless the court prescribes or adopts modifications of those Rules." This statute came into play in 2005, when Federal Rule of Appellate Procedure 35(a) was amended as follows to explicitly adopt the case majority rule: "A majority of the circuit judges who are in regular active service *and who are not disqualified* may order that an appeal or other proceeding be heard or reheard by the court of appeals en banc." Fed. R. App. P. 35(a) (emphasis added). Prior to this amendment, the federal rule was substantially the same as our own Rule 35(a), which itself closely tracked the language of D.C. Code § 11-705(d), the statute it implemented. As we took no action prior to the day the amendment went into effect—December 1, 2005—this court adopted the federal rule and its case majority approach by operation of law on that day.

A week later, however, in an order dated December 8, 2005, we stayed the amendment "*nunc pro tunc* to November 30, 2005," ordering

> that the amendments to the General Rules of this Court, which would otherwise be effected by the amendments to [Federal Rule 35 and others] are, in accordance with D.C. Code § 11-743, stayed . . . pending the completion of this Court's review of the amendments or until further order of this Court.

In light of this order, a key question is whether this stay had expired prior to our March 2017 vote on the petition for rehearing en banc, in which case the case majority rule embodied in Federal Rule 35(a) would govern the result of that vote.

---

Judges Easterly and McLeese and I then announced in the same joint statement "that we should depart, in this case and any other that presents the same circumstances, from the general policy of recusal to the following extent: each of us who has had no personal and substantial involvement in the particular matter will participate in the resolution of the petition, so that the court will have a quorum." We each then acted accordingly.

By its own terms, the stay remained in effect only "pending the completion of this Court's review of the amendments or until further order of this Court." In June of 2016, we issued a notice to the public indicating that "[t]he court has now conducted a further review, by comparing the current version of the FRAP with the current version of this court's rules" and proposing the adoption or modification of various federal amendments that the court had stayed. Notice, No. M-255-16 (June 24, 2016). On October 11, 2016, we issued an order adopting the proposed amendments.

The court's 2016 notice that it had conducted a review of the federal amendments and its subsequent order adopting certain amendments satisfied the conditions laid out in the 2005 order by demonstrating "the completion of this Court's review of the amendments." No "further order of this Court" has adjusted the terms or duration of the stay. Thus, although neither the June 2016 notice nor the October 2016 order evinced an intent to lift the stay on the amendment to Rule 35(a)—indeed, neither even mentioned Rule 35(a)—it is clear that when the petitions for rehearing were denied in March of 2017, the stay was no longer in effect. In the absence of the stay, we are bound under D.C. Code § 11-743 to conduct our business under Federal Rule 35(a) unless and until we act to prescribe or adopt modifications to that rule—an action that must be more overt than an unexplained failure to address the rule in the course of adopting other amendments. As this court held in *Flemming v. United States*, 546 A.2d 1001, 1005 (D.C. 1988), with respect to D.C. Code § 11-946, the Superior Court counterpart to D.C. Code § 11-743, "[b]y deciding not to modify the Federal Rule," the court "merely allowed the Federal Rule to take effect." Our colleagues' contention that this court could not "passive[ly] delegat[e]" its authority to prescribe or modify its own rules of practice, see *ante* at 5–6, runs headlong into § 11-743's plain statement to the contrary: that we "shall" conduct our business under the federal rules "unless" we modify those rules.

According to our colleagues, "[a] majority of the Board of Judges voted to reaffirm that this court will continue to adhere to the 'absolute majority' rule for voting on en banc petitions" pending the Rules Committee's consideration of the matter. *Ante* at 3. The result of this vote was not circulated for notice and comment, which our colleagues note is "the court's usual practice" for introducing new rules and amendments. *Ante* at 4 n.3. It was also not made known through a published order or, until now, otherwise revealed to the public. More fundamentally, this vote to "adhere" to the absolute majority rule took place on February 27, 2017, well after the date on which I believe our stay of the amendment to Rule 35(a) expired and its case majority rule took effect for this court by operation of law. It is therefore hard

to say how the court could have resurrected the absolute majority rule by virtue of this vote, or how that rule could then have defined the court's subsequent ruling on the rehearing petition. Indeed, our colleagues concede that "the court has yet to deliberate the merits of adopting . . . the case majority approach for this court." *Ante* at 6. Given these circumstances—and particularly given that the Board of Judges' action did not prompt an affirmative stay of the federal rule—this unannounced decision purporting to "adhere to" an unpublicized rule looks more like an after-the-fact justification than an administrative placeholder for the court's eventual formal consideration of the merits of the federal rule.

Even if the stay somehow remained in effect—and if our own Rule 35(a) thus controlled—our rule and D.C. Code § 11-705(d), whose language the rule mirrors, are best read to exclude recused judges when calculating "a majority of the judges . . . in regular active service." As one federal judge noted in interpreting language in the pre-2005 federal Rule 35(a) that was identical to this court's Rule 35(a), a recused or disqualified judge "is *out of service* insofar as that particular case is concerned. To disqualify means to debar legally. That is synonymous with lack of legal capacity, i.e., with inability to serve." *Arnold v. E. Air Lines, Inc.*, 712 F.2d 899, 904 (4th Cir. 1983) (statement of Murnaghan, J.) (citing Webster's New International Dictionary, 2d ed., p. 753). The advisory committee that approved the amendment to the federal rule likewise endorsed the case-majority construction of the words in the statute and the rule. Although the federal circuit courts were split on whether the absolute majority or case majority rule should apply, *see* Marie Leary, Defining the "Majority" Vote Requirement in Federal Rule of Appellate Procedure 35(a) for Rehearings En Banc in the United States Courts of Appeals 8 tbl.1 (Federal Judicial Center 2002), the advisory committee determined that "[t]he case majority approach represents the better interpretation of the phrase 'the circuit judges . . . in regular active service' in the first sentence of [28 U.S.C.] § 46(c)," the nearly identical federal counterpart of D.C. Code § 11-705(d). Accordingly, the advisory committee characterized the insertion of the phrase "and who are not disqualified" after "a majority of the circuit judges who are in regular active service" as a clarification of the federal statute and rule—"a uniform national interpretation"—rather than a revision. The Supreme Court's subsequent adoption of this amendment is strong evidence that the federal statute sets forth the case majority rule, and the fact that it was Congress that passed both the D.C. and the federal statutes is stronger evidence still that the same words that appear in the D.C. Code and the U.S. Code do not mean different things.

The case majority rule also produces fewer difficulties and anomalies than the absolute majority rule. It allows "the judges of the court in regular active service"

to be interpreted identically in both the first sentence of D.C. Code § 11-705(c) ("A hearing before the court in banc may be ordered by a majority of the judges of the court in regular active service") and the second sentence ("The court in banc for a hearing shall consist of the judges of the court in regular active service") without inexplicably requiring recused judges to participate in en banc hearings. It avoids counting recused judges as effectively voting against rehearing, in defiance of the purpose of recusal. *See Arnold*, 712 F.2d at 905 (referring to "the rule that [a disqualified judge] should take no action which would possibly affect the outcome of a case."). And the case majority rule prevents the scenario that occurred in this case, in which a majority of participating judges lacks the authority to vacate a panel decision and grant en banc consideration even where the quorum requirement is satisfied.

To sum up, if we are not bound to apply the 2005 amendment to Federal Rule 35(a) despite the mandate of D.C. Code § 11-743, that can only be because we are employing a problematic reading of our rule that conflicts with the more natural interpretation of the similar federal rule that has been adopted by the Supreme Court, and because the stay we issued in 2005 remains in place despite the seeming fulfillment of its expiration conditions. *See Johnson v. United States*, 647 A.2d 1124, 1125 (D.C. 1994) (statement of Farrell, J.) (noting, in a statement joined by the entire court, that "it would indeed be contrary to the statute if this court were routinely, without adequate justification, to grant stays of the duration (one year) requested in this case"). Relying on ordinary sources of law, the appellants' counsel likely and reasonably believed that a four-to-three vote in their favor would be sufficient to win them en banc review. The judicial goals of transparency and regularity are in jeopardy if this expectation was defeated by the perpetuation of a 2005 order that was clearly intended to be temporary, while the important questions that divide us—both on the merits of appellants' rehearing petition and on how we go about deciding whether to grant such rehearing—remain unresolved.

Copies to:

Honorable Henry F. Greene

Director, Criminal Division

Copies e-served to:

Steven R. Kiersh, Esquire

Thomas T. Heslep, Esquire

Deborah A. Persico, Esquire

Judith A. Lovelace, Esquire

Samia Fam, Esquire
Public Defender Service

Elizabeth Trosman, Esquire
Assistant United States Attorney

pii